## WATERHOUSE *vs.* DORR.

A license to sell goods by auction, granted under *Stat.* 1821, *ch.* 134, *sec.* 1, is of no force beyond the limits of the town to which the selectmen and auctioneer belonged at the time it was granted.

This was an action of debt, to recover the penalty in *Stat.* 1821, *ch.* 134, *sec.* 1, for selling goods at public vendue, the defendant not having been duly licensed therefor. In a case stated by the parties, it was agreed that the defendant was duly licensed by the selectmen of *Waterville*, where he resided ; but that the sale of the goods was in *Gardiner* ;—and whether the license authorized the party to sell by auction out of the limits of the town where he dwelt, was the question submitted to the court.

*Allen*, for the plaintiff, maintained the negative of this question ; arguing from the mischiefs of a different construction of the statute, and the apparent intent of the legislature to prevent them. If the employment is not to be exercised in the town where the parties reside, it will not be in the power of the selectmen to determine whether it has been exercised in a proper manner, and made conducive to the public good; nor whether the party is entitled to a renewal of his license for another year. All that salutary restraint over the conduct of an auctioneer, which the eye of vigilant selectmen imposes, will thus be lost; and the citizens be exposed to all the frauds and deceptions which the statute was designed to prevent. Moreover, the inducement to take any

license would be removed, whenever the person intended to exercise the employment in a distant part of the State, remote from the means of ascertaining his want of a good moral character.

That this construction, seeking the intention of the legislature beyond the literal reading of statute, was warranted by precedent, he instanced the case of pauper laws, in *Shirley v. Watertown* 3 *Mass.* 322. *Somerset v. Dighton* 12 *Mass.* 383. · *Hallowell v. Gardiner* 1 *Greenl.* 93 ;—and the case of sheriffs, in *Bristol v. Marblehead* 1 *Greenl.* 82. He also cited *Holbrook v. Holbrook* 1 *Pick.* 254. If the literal construction be adopted, the words of the statute will be satisfied by a license from the selectmen of any town in another State, if it be the town in which the party resided ; and the jurisdiction of our own selectmen will be made commensurate with the limits of the State.

*Boutelle*, for the defendant, adverted to the *Stat.* 1789, *ch.* 58, which required that auctioneers should have the approbation of the selectmen of their towns, and be licensed by the treasurer of the Commonwealth, paying a duty into the public chest ; and which expressly prohibited them from selling, out of the limits of their own town. As the object of this latter provision was to raise a revenue to the State, it was abandoned when the duty was abolished, on the revision of the law by *Stat.* 1795, *ch.* 8, which contained no such prohibition. The provisions of the latter statute, and of two additional acts, formed the materials of the statute of this State on which the present action is founded ; and the restriction having been thus deliberately omitted in the revised legislation on the subject, it ought not to be resuscitated by implication.

It is also in derogation of the common law right of every man to dispose of his property in his own mode. · And being not a remedial statute, its provisions are not to be extended by any supposed equity of construction. *Melody v. Reab* 4 *Mass.* 473. Nor is it rendered necessary by any considerations of public convenience or good policy. The public has no interest in the subject, except that the auctioneer should be a person of good moral character ; and this security is obtained by requiring the appro-

bation and license of the selectmen of the town where he resides, and where, of course, he is best known. This is all which the law requires in the case of schoolmasters; whose integrity ought to be secured by as high sanctions, to say the least, as that of an auctioneer.

The objection that, upon the defendant's construction, the juris-diction of the selectmen is extended beyond the limits of their town, loses its force when it is considered that no authority is claimed for them, except as to the citizens of their own town; and this, only in regard to their general character and fitness for the employment, as in the case of schoolmasters and pedlars, and not in respect of the place in which that employment may be exercised. And this is in accordance with the principle of several other statutes, which require selectmen to do many acts having no direct relation to the corporations they represent;—as in *Stat.* 1821, *ch.* 133, *sec.* 2—*ch.* 148, *sec.* 22—*ch.* 154, *sec.* 12 —*ch.* 172, *sec.* 2—*ch.* 179, *sec.* 2, 3.

The opinion of the court was read at the ensuing *November* term in *Cumberland,* as drawn up by

MELLEN C. J. The statute of 1821, *ch.* 134, declares that no person, unless licensed by the major part of the selectmen of the town to which he belongs, shall sell any goods or chattels at pub-lic vendue; and whoever violates the law in this particular, is subject to a penalty. For such penalty this action is brought. The defendant, being an inhabitant and resident of *Waterville,* was duly licensed by the selectmen of that town as an auctioneer; and afterwards sold the goods mentioned, in the town of *Gardiner,* at a public vendue; claiming a right so to do, in virtue of said license;—and the question is, whether it gave him any right. By the letter of the statute the virtue of the license is not confined to the limits of the town to which the person licensed belongs. The penal provision is, " and if any person, without such license, shall sell," &c. Hence it is argued, that no penalty is incurred by a sale in any town, provided the person selling was previously licensed by the selectmen of some town. We cannot allow of so

much latitude of construction. According to the reason of the thing and the spirit of the law, the license can only be valid within the town where it is granted ; the power of the selectmen does not extend beyond the limits of such town. It must be considered a matter of municipal concernment throughout. The person licensed must belong to the town where he is licensed. The selectmen are made judges of the number, and qualifications of such as the interests of a town may require to be licensed ; but they are not competent judges how many may be necessary or proper in other towns: and, if they are, still the qualifications deemed sufficient by the selectmen of one town, might be wholly insufficient for such an office in another town. It could never be the design of the legislature that one of the smallest and most remote towns in the State should, by their selectmen, have the power to appoint a swarm of auctioneers, and thereby authorize them to go into the larger and more populous towns, open their offices, and sell goods at vendue, to the exclusion, or at least the great prejudice, of those persons appointed by the selectmen of such towns. Reasoning from analogy, it would be just as proper and useful for the selectmen of one town to recommend persons as suitable to be licensed as innholders and retailers in another town. Such a thing was never heard of. The language of the statute respecting the choice of surveyors of lumber, is as general as that of the section we are considering. Yet each town has the right to choose its own surveyors ; and as many as they please. The principle on which the defence depends cannot be sanctioned ; and therefore, according to the agreement of the parties, a default must be entered.